United States District Court
Southern District of Texas
**ENTERED**
May 21, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNION TANK CAR COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-1421 |
| | § | |
| W. KEITH MAXWELL; NUDEVCO | § | |
| PARTNERS, LLC; NUDEVCO PARTNERS | § | |
| HOLDINGS, LLC; ASSOCIATED ENERGY | § | |
| SERVICES, LP; COPROTECTION, LLC; | § | |
| RETAILCO ACQUISITION CO, LLC; | § | |
| NMD HOLDINGS LLC (f/k/a SOLANDRI | § | |
| INVESTMENTS, LLC); NUDEVCO | § | |
| MIDSTREAM DEVELOPMENT, LLC (f/k/a | § | |
| MARLIN MIDSTREAM SERVICES, LLC); | § | |
| XCALIBUR LOGISTICS, LLC; AES | § | |
| VENTURES (f/k/a SPARK ENERGY | § | |
| VENTURES, LLC); NUDEVCO RETAIL | § | |
| HOLDINGS, LLC; NUDEVCO RETAIL, | § | |
| LLC; XCAL HOLDINGS, LLC (f/k/a | § | |
| BESTBUY ENERGY, LLC); NUDEVCO | § | |
| MIDSTREAM LAND COMPANY, LLC; | § | |
| AND AES VENTURES HOLDINGS, LLC | § | |
| (f/k/a MOBIL DOC, LLC), | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case and a prior case litigated in the state courts in Illinois seek payments due under a

lease and guaranty. General Electric Railcar Services Corporation (GE Railcar), leased railcars to

Ponderosa Petroleum Company. (Docket Entry No. 1 at 9; Docket Entry No. 84 at 7). The

plaintiff, Union Tank Car Company, and the two of the entity defendants, NuDevco Partners

Holdings LLC (NuDevco), and Associated Energy Services, LP (Associated Energy), acquired

interests in the lease through assignments, taking on substantial liability. NuDevco, Associated

Energy, and other entity defendants then engaged in a series of cash and asset transfers, allegedly

1

without consideration, at the direction of the individual defendant, Keith Maxwell, who directly or indirectly owned or controlled all the entity defendants.  The result, alleges Union Tank Car, the plaintiff, is that the entity defendants and Keith Maxwell owe it over $2 million in damages and unpaid rent under the lease and guaranty.

The parties cross-move for summary judgment, raising four sets of issues: (1) whether Union Tank has standing to sue NuDevco for breach of the guaranty agreement; (2) whether an Illinois judgment entitles Union Tank to unpaid rent and expenses; (3) whether Union Tank can recover against each of the defendants for fraudulent transfers; and (4) whether Associated Energy's commercial-frustration defense fails as a matter of law.

Based on the pleadings; the motions, replies, and responses; the summary judgment record; the arguments of counsel at a hearing held on April 1, 2021; and the law, this court grants and denies in part the cross-motions for summary judgment.  The reasons are set out in detail below.

## I.    The Summary Judgment Record

GE Railcar leases and manages a fleet of railcars.  Associated Energy, which provides services to energy companies, leased 47 railcars from GE Railcar to haul petroleum products for its customers.  (*See* Docket Entry No. 1 at 9; Docket Entry No. 81-5 at 2–3; Docket Entry No. 84 at 8).  The lease and its riders, executed on April 1, 2015, required Associated Energy to pay GE Railcar monthly rent for each leased railcar.  (Docket Entry No. 1 at 10; Docket Entry No. 84 at 9; Docket Entry No. 81-1 at 1).

NuDevco, then Associated Energy's parent company, signed a guaranty for the lease in March 2015.  (Docket Entry No. 92-1).  NuDevco is a holding company that Keith Maxwell indirectly owns, as he does the other entity defendants.  (*See* Docket Entry No. 1 at 15; Docket Entry No. 84 at 9; Docket Entry No. 102); (*see also* Docket Entry No. 81-4 at 1–5).  In September

2015, Associated Energy stopped paying rent to GE Railcar and attempted to return the railcars it had leased.  (Docket Entry No. 1 at 12; Docket Entry No. 81-2 at 12–13 ¶¶ 33, 36; Docket Entry No. 84 at 12).

Union Tank Car owns railway equipment and railcars that it offers for lease.  On September 30, 2015, Union Tank bought the rights and assets under Associated Energy's railcar lease from GE Railcar.  (Docket Entry No. 1 at 12; Docket Entry No. 84 at 11; *see generally* Docket Entry No. 93-1).  Union Tank's purchase of the GE Railcar/Associated Energy lease from GE Railcar granted Union Tank "all rights under [c]ustomer [a]greements" and "all causes of action against third parties to the extent Related to the US Tank Car Assets," (Docket Entry No. 93-1 § 2.01(b)), as "exist[ing] immediately prior to the Asset Closing." (*Id.* at § 2.01).  Union Tank sought the payments due under the lease from the guarantor, NuDevco, one of the entities that Maxwell indirectly owned or controlled.  *See Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st), 123 N.E.3d 1177, 1181; (Docket Entry No. 84 at 9).  NuDevco did not pay.  (Docket Entry No. 45 at ¶ 19).

In 2016, Union Tank sued NuDevco in Illinois state court to enforce the guaranty for the railcar lease payments.  (Docket Entry No. 1 at 13; Docket Entry No. 84 at 12; *see generally* Docket Entry No. 81-5).  In 2017, the Illinois court entered judgment for Union Tank, finding that NuDevco breached the guaranty agreement and awarding damages.  (Docket Entry No. 81-5 at 8, 10; Docket Entry No. 81-6 at 5).  The Illinois final judgment required NuDevco to pay Union Tank over $1.4 million in damages, plus prejudgment and postjudgment interest.  (Docket Entry No. 1 at 7, 14; Docket Entry No. 81 at 7–9; Docket Entry No. 81-6 at 5).  The Illinois court did not award Union Tank damages for future rent because rent acceleration is not allowed under Illinois law.

(Docket Entry No. 1 at 15; Docket Entry No. 81-5 at 9); *see also Union Tank Car*, 123 N.E.3d at 1188.

NuDevco claims that it is insolvent, and it did not pay the Illinois court judgment. (Docket Entry No. 1 at 7; Docket Entry No. 84 at 12). During postjudgment discovery in the Illinois case, Union Tank learned of a series of transactions that it alleges show that NuDevco's insolvency resulted from fraud orchestrated by Maxwell and implemented through the defendant entities that he owns or controls. (Docket Entry No. 1 at 15–18; see Docket Entry No. 84 at 8–11). The record details many cash and LLC transfers in 2015 from NuDevco Holdings to the other defendant entities. (*See* Docket Entry 1 at 15–19; Docket Entry Nos. 85-2, 85-3, 93-7 (documenting the various LLC transfers); Docket Entry Nos. 93-8, 85-4 (documenting the various cash transfers)). According to Union Tank, badges of fraud abound. (Docket Entry No. 92 at 17–20). According to the defendants, explanations showing valid transactions abound.

By August 3, 2015, about a month before Associated Energy abandoned the railcars, NuDevco had no assets, (Docket No. 84 at 10-12), and only $3,045 in cash. (Docket Entry No. 93-8 at 24). NuDevco and the other defendants explain the transfers that resulted in NuDevco's insolvency as part of a "corporate reorganization." (Docket Entry No. 84 at 9). By September 28, 2015, NuDevco had no cash. (*See* Docket Entry No. 93-8 at 26–27). NuDevco explains the cash transfers by its operation as a holding company, which "distribute[s] cash to its operating companies on an as-needed basis to fund their operating expenses." (Docket Entry No. 84 at 9).

In April 2019, Union Tank filed this lawsuit to collect the unpaid Illinois judgment and to seek additional damages for the rent that became due between the Illinois judgment and the expiration of all abandoned railcar leases. (Docket Entry No. 1 at 15). Union Tank argues that Associated Energy breached the master lease, NuDevco breached the guaranty, and Maxwell, in

collaboration with the entity defendants he controls, fraudulently transferred assets to avoid paying the damages.  (*Id.* at 20–24).  Union Tank asks for three equitable remedies as well as damages: (1) an attachment for $2,352,745.46 (the amount of the Illinois judgment without interest and with unpaid rent; (2) an injunction to prevent the defendants from transferring that amount; and (3) the appointment of a receiver to locate and preserve the $2,352,745.46 that Union Tank seeks. (*Id.* at 24–28).

The parties cross-moved for partial summary judgment, responded, and replied.  (Docket Entry Nos. 81, 84, 92, 94, 96, 97).  They dispute whether: (1) Union Tank has standing to sue NuDevco for breaching the guaranty; (2) the Illinois judgment has preclusive effect so as to entitle Union Tank to unpaid rent and expenses under the lease and guaranty; (3) Union Tank can recover against each of the defendants for the allegedly fraudulent transfers; and (4) whether Associated Energy's commercial-frustration defense fails as a matter of law.  (*See* Docket Entry No. 81 at 1–2); (Docket Entry No. 84 at 3–5); (Docket Entry No. 92 at 2); (Docket Entry No. 94 at 12–13). Each issue is discussed below under the applicable legal standards.

## II.    The Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Shepherd on Behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if it would affect the outcome of the case" and "a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 882–83 (5th Cir. 2019) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s]

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the nonmovant has the burden of proof at trial, "the movant may merely point to the absence of evidence and thereby shift to the nonmovant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.,* 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).  The moving party must show the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 335 (5th Cir. 2017) (per curiam).  If the moving party cannot meet this initial burden, the court must deny the motion, regardless of the non-movant's response.  *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).  The non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp*., 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C*., 914 F.3d 940, 946 (5th Cir. 2019) (quotations omitted).  Courts deciding a summary judgment motion "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th 2020); *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

### III.    Analysis

#### A.        Union Tank's Standing to Sue NuDevco

The defendants seek summary judgment on Union Tank's claim that NuDevco breached its guaranty of the lease when it failed to make the rent payments due under lease.  (*See* Docket Entry No. 97 at 10–11).  The defendants argue that Union Tank has no standing to pursue these claims because Associated Energy began abandoning the railcars on September 1, 2015, (*see* Docket Entry No. 81 at 3), before Union Tank acquired the guaranty and lease from GE Railcar on September 30, 2015.  (*See* Docket Entry No 84 at 23–24); (*see generally* Docket Entry No. 93-1) (purchase agreement between GE Railcar and Union Tank).  The defendants' argument is unpersuasive, for two reasons.

First, the purchase agreement between GE Railcar and Union Tank shows that Union Tank acquired GE Railcar's rights and preexisting claims against third parties at closing.  Union Tank's purchase agreement[1] with GE Railcar granted it "all rights under [c]ustomer [a]greements" and "all causes of action against third parties to the extent Related to the US Tank Car Assets," (Docket Entry No. 93-1 § 2.01(b)), "as exist[ing] immediately *prior to* the Asset Closing." (*Id.* at § 2.01) (emphasis added).  Second, the defendants are precluded from claiming that Union Tank cannot pursue a claim for breach of the guaranty against NuDevco because that issue was clearly decided in, and necessary to, the Illinois judgment.  *See Hope Clinic for Women, Ltd. v. Flores*, 991 N.E.2d 745, 764 (Ill. 2013) (collateral estoppel, or issue preclusion, prevents the parties from relitigating issues that are identical to an issue necessary to a prior judgment if the parties are the same and the judgment is final on the merits).

---

[1] The defendants rely on the Notice of Sale to argue that Union Tank's rights did not arise until after September 20, 2015.  (*See* Docket Entry No. 84 at 16; Docket Entry No. 97 at 10–11).  This argument is unsupported.  It is the Purchase Agreement, not the Notice of Sale, that governs the rights passed from GE Railcar to Union Tank.  (*See generally* Docket Entry No. 93-1).

Summary judgment is denied on this issue.

**B.    The Preclusive Effect of the Illinois Judgment**

Union Tank argues that the Illinois judgment precludes NuDevco and Associated Energy from relitigating liability for unpaid rent and expenses under the breached guaranty and lease. Illinois law governs the preclusion analysis. *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."); *see also Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011) ("In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment.").

Illinois courts apply issue preclusion, or collateral estoppel, to prevent relitigation of issues necessary to the earlier final judgment. *Kindle v. Kinkaid Reeds Conservation Dist.*, No. 18-CV-1516-RJD, 2020 WL 5517187, at *4 (S.D. Ill. Sept. 14, 2020). Issue preclusion under Illinois law requires that: "(1) the issue decided in the prior proceeding is identical to the issue in the current suit; (2) the prior judgment is final on the merits; and (3) the party against whom the estoppel is asserted was a party to, or in privity with, a party to the prior adjudication." *Hope Clinic for Women, Ltd. v. Flores*, 991 N.E.2d 745, 764 (Ill. 2013). Preclusion applies to questions of law and findings of fact. *Du Page Forklift Service, Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849–50 (Ill. 2001). The party invoking preclusion has the burden of showing that preclusion applies. *See Gassman v. Clerk of the Cir. Ct. of Cook Cty.*, 71 N.E.3d 783, 793 (Ill. Ct. App. 2017).

NuDevco was a party to the first action. Associated Energy was not. The preclusive effect of the Illinois judgment on each party is considered separately.

### 1.   NuDevco is Liable for Unpaid Rent Under the Guaranty

The Illinois judgment establishes NuDevco's liability for breach of the guaranty and entitles Union Tank to unpaid rent accrued since that judgment. (Docket Entry No. 81-5 (trial court judgment); *Union Tank Car*, 123 N.E.3d at 1188 (affirming the trial court's judgment).

Each of the preclusion elements is met. The Illinois judgment is final. Union Tank and NuDevco were parties in both actions. The Illinois judgment decided the same issue raised in this case: whether NuDevco breached the guaranty. (Docket Entry No. 81-5 at 7 ("NuDevco is liable under the guaranty")); *Union Tank Car*, 123 N.E.3d at 1188 (affirming NuDevco's liability on appeal).

NuDevco makes several arguments that the Illinois judgment lacks preclusive effect. None is persuasive, because none affect the issue of NuDevco's liability.

NuDevco argues that the Illinois court did not "determine the specific amount of [u]npaid [r]ent" that would accrue before the lease term ended. (*See* Docket Entry No. 94 at 14). This argument does not undermine preclusion, because the Illinois court found NuDevco liable for breaching the guaranty and directed Union Tank to sue for the future rent, either when it became due or when the lease ended. (Docket Entry No. 81-5 at 8); *Union Tank Car*, 123 N.E.3d at 1188 (the Illinois court did not include the present value of future unpaid rent in the judgment because "[u]nder the [state's] common law, damages for breach of a lease do not include future rent."). When the lease term ended, Union Tank filed this lawsuit. (*See* Docket Entry No. 81 at 4; Docket Entry No. 1). NuDevco does not dispute the rental rate and term for each of the leased railcars. (Docket Entry No. 81-4 at ¶¶ 24–25). NuDevco has not paid $935,600 in rent. (*See* Docket Entry No. 81 at 4); (*see also* Docket Entry No. 81-4 at 13 ¶¶ 33, 36, 37, 40, 46). The

Illinois judgment establishes that "NuDevco is liable under the guaranty." (Docket Entry No. 81-5 at 7).

NuDevco also argues that this court should not rely on the Illinois judgment because Union Tank did not incur the storage costs the Illinois court awarded. (Docket Entry No. 94 at 15; *see* Docket Entry No. 81-5 at 9 (awarding "future storage" damages)). The Illinois appeal court rejected NuDevco's arguments about the future storage costs. *Union Tank Car*, 123 N.E.3d at 1184. The amount of storage costs is not material to the Illinois court's finding of liability. *See Renwick*, 901 F.3d at 611 ("A material fact is one that might affect the outcome of the suit under governing law.") (quotation marks omitted). Union Tank does not include the disputed amount for future storage costs in its request for out-of-pocket expense damages, (Docket Entry No. 96 at 17–18), as explained below.

NuDevco's final argument is that "injustice would result" if it is estopped from disputing its liability to Union Tank for the unpaid rent. (Docket Entry No. 94 at 16). There is no injustice in this straightforward application of issue preclusion. *See Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) ("A final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.").

NuDevco speculates about whether Union Tank would have performed under the lease. (Docket Entry No. 94 at 16–17). The record fails to make this argument more than speculative. The record instead shows that Associated Energy abandoned the railcars, was in breach of the lease, and never attempted to cure. (Docket Entry No. 81-5 at 5–7).

The Illinois judgment establishes NuDevco's liability for breach of guaranty. (*See* Docket Entry No. 81-5); *Union Tank Car*, 123 N.E.3d at 1188. Summary judgment is granted for Union Tank on this issue.

### 2. Associated Energy is Liable for Expenses Under the Breached Lease

The Illinois court awarded damages for expenses to Union Tank based on NuDevco's breach of the guaranty.[2] The court found that Associated Energy, the party owing the underlying rent obligation, breached the underlying lease. (*See* Docket Entry No. 81-5 at 6 ("[Associated Energy's] early return [of the railcars] constituted a breach of the terms of the leasing agreement.")); *Union Tank Car*, 123 N.E.3d at 1183 ("[T]he guaranty would not have been triggered but for Associated Energy's breach of the lease.").[3] That finding was essential to the judgment against NuDevco, the guarantor.

"The term 'privity' is not precise, and there is no generally prevailing definition that can automatically be applied in all cases." *City of Chicago v. St. John's United Church of Christ*, 935 N.E.2d 1158, 1167 (Ill. App. Ct. 2010).[4] The inquiry "requires a careful examination into the circumstances of each case." *Purmal v. Roberts N. Wadington and Assocs.*, 820 N.E.2d 86, 94 (Ill. App. Ct. 2004). Parties are in privity when they are explicitly representative, share legal interests in the outcome of the action, or are successors in a property interest. *See Oshana v. FCL*

---

[2] The final Illinois judgment awarded Union Tank $418,092.90 in expenses. (*See* Docket Entry No. 81-5 at 10; Docket Entry No 81-6 at 5; Docket Entry No. 81-7 at 6, 11). Union Tank seeks only $320,876.19. (*See* Docket Entry No. 81 at 21–22). That amount excludes the disputed "future storage costs" awarded by the Illinois court. (*See* Docket Entry No. 94 at 15; Docket Entry No. 81-5 at 10).

[3] The Illinois court rejected NuDevco's argument that the UCC applied to Union Tank's prior action. *Union Tank Car Co.*, 123 N.E.3d at 1183. The court acknowledges that Union Tank's claim against Associated Energy implicates the conditions precedent to recovery under the UCC. *See id.* The Illinois appellant court found a "reasonable inference" that Union Tank would have met its performance obligations if the UCC applied. *Id.*

[4] This section includes cases discussing res judicata and cases discussing collateral estoppel. The standards for privity are the same under both doctrines. *See Direct Auto Ins. Co. v. Bahena*, 131 N.E.3d 1094, 1109 (Ill. App. Ct. 2019).

*Builders, Inc.* 994 N.E.2d 77, 85 (Ill. Ct. App. 2013) (quoting RESTATEMENT (SECOND) OF JUDGMENTS §75, cmt. A at 210 (1982).  Privity based on shared legal interests requires adequate, but not necessarily successful, representation.  *Lutkauskas v. Ricker*, 28 N.E.3d 727, 739 (Ill. 2015).  A nonparty may be bound by privity if the interests are so closely aligned to those of a party that the party is the "'virtual representative' of the nonparty."  *St. John's United Church of Christ*, 935 N.E.2d at 1168.  A shared legal interest, not the identity of the parties, controls when determining privity.  *Lutkauskas*, 28 N.E.3d at 739.  The record shows that Associated Energy and NuDevco were in privity throughout the Illinois action.  The parties shared legal interests in that action, which NuDevco adequately represented.

Associated Energy shared NuDevco's legal interest in avoiding liability for the expenses incurred under the breached lease.  NuDevco adequately represented Associated Energy's interest in denying or avoiding its liability under the lease.  *See Union Tank Car*, 123 N.E.3d at 1183 ("NuDevco maintains that . . . its liability under the guaranty is predicated on the amounts due under the lease.").  NuDevco disputed and appealed the amount that Union Tank now seeks from Associated Energy.  (*See* Docket Entry No. 81-5 at 7) (NuDevco's arguments against the lease expenses); *see also Union Tank*, 123 N.E.3d at 1183 ("NuDevco contends that the [Illinois] trial court erred in awarding damages to Union Tank for anticipated blasting and future storage costs.").  In the Illinois action, NuDevco asserted the same commercial-frustration defense to the breach of the underlying lease that Associated Energy now raises, but it was stricken.  (Docket Entry No. 81-5 at 7).  Associated Energy's argument that NuDevco could not represent its interests because the guaranty waived defenses is unpersuasive.  (Docket Entry No. 94).  NuDevco's vigorous litigation of Associated Energy's liability under the lease shows a common legal interest.

NuDevco and Associated Energy also had a common legal interest based on their interests in the railcars. Through his ownership of NuDevco Partners, Maxwell indirectly owned both entities. *Apollo Real Est. Inv. Fund, IV, LP v. Gelber*, 935 N.E.2d 963, 974 (Ill. App. Ct. 2010) (two corporations are in "privity" when they are closely and commonly held, commonly controlled, or when no "other [entity has] an interest in the [earlier action's] subject matter.") (quoting *Cohen v. Schlossberg*, 150 N.E.2d 218, 233 (1958)); *see also Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1135 (2011) (privity exists between parties with mutual property rights that form the basis of a prior action). NuDevco's guaranty made it liable for all the "rent, service charges, freight, railroad charges, lessee responsible repairs and maintenance, casualties, return obligation, cleaning charges, etc.," that Associated Energy incurred under the lease. (Docket Entry No. 81-5 at 8). The entities' common ownership, shared accountability under the lease, and shared responsibility for the railcars all support finding a shared legal interest in the subject of the Illinois action.

The same attorney who represented NuDevco in the Illinois action now represents Associated Energy. (Docket Entry No. 96 at 15). On its own, common legal representation is not enough for privity. (*See* Docket Entry No. 94 at 20); *see also Gassman*, 71 N.E.3d at 791–92 (there is no privity between the plaintiffs in a prior action and plaintiffs in a subsequent action solely because the same attorney represented both groups of plaintiffs); *Yorulmazoglu v. Lake Forest Hosp.*, 834 N.E.2d 468, 474–75 (Ill. App. Ct. 2005) (common legal representation is not enough, standing alone, to establish privity). Common representation is, however, a factor that supports finding privity between NuDevco and Associated Energy. *See, e.g., Yorulmazoglu*, 834 N.E.2d at 475 (common legal representation "bolstered" finding privity when the parties also shared a legal interest in collecting a debt against the same corporation). Associated Energy also

paid for NuDevco's defense in the prior action.  (Docket Entry No. 81-2 at 19–20; Docket Entry No. 81-4 at 20).

The parties' common legal representation and financing shows their shared interest in fighting liability for expenses resulting from the breached lease.  Summary judgment is granted for Union Tank on this issue.  Associated Energy is not precluded from raising its affirmative defenses in this action.

## IV.    The Fraudulent Transfers

Under the Texas Uniform Fraudulent Transfer Act (TUFTA), Union Tank seeks avoidance of the cash and LLC interest transfers from NuDevco to Maxwell and the other entity defendants. The defendants move for summary judgment on the TUFTA claims, arguing that Union Tank lacks evidence to support the claims against each defendant.  (Docket Entry No. 84 at 6).

TUFTA allows a creditor to avoid a debtor's fraudulent transfers "to the extent necessary to satisfy the creditor's claim."  TEX. BUS. & COM. CODE § 24.008(a)(1); *see also GE Cap. Com., Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 302 (5th Cir. 2014).  TUFTA bars a debtor from defrauding creditors by moving assets beyond their reach.  *GE Cap. Com., Inc*, 754 F.3d at 302. Creditors can recover against either "the first transferee of the asset or the person for whose benefit the transfer was made," or "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."  TEX. BUS. & COM. CODE § 24.009.  "[A] determination of liability under TUFTA is a two-step process: first, a finding that a debtor made an actual fraudulent transfer or a constructive fraudulent transfer; and, second, recovery for that fraudulent transfer, or its value, from the transferees."  *Spring St. Partners–IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir.2013) (citations omitted).

The court considers summary judgment issues under TUFTA as to each defendant.

### 1.     The Statute of Limitations

TUFTA has a four-year statute of limitations for claims based on transfers that involve actual fraud. TEX. BUS. & COM. CODE § 24.010(a). For actual fraud claims, the limitations extends to up to one year after the transfer "could reasonably have been discovered by the claimant." Id. § 24.010(a)(1) (limiting the one-year deadline to claims brought under TEX. BUS. & COM. CODE §24.005(a)(1), or those alleging "actual" fraud); see also Janey v. Romero, 817 F.3d 184, 189 (5th Cir. 2016) (applying §24.010(a)(1) to extend the TUFTA statute of limitations to one year from when "the claimant knew or reasonably could have known both of the transfer and that it was fraudulent in nature").

The parties agree that the statute of limitations prevents Union Tank from avoiding transfers before April 18, 2015, under a constructive-fraud theory. (*See* Docket Entry No. 1 (complaint filed on April 18, 2019); Docket Entry No. 92 at 23; Docket Entry No. 84 at 13).

Union Tank argues that its actual-fraud claims are within the statute of limitations because it did not know, and could not in the exercise of reasonable care have known, about the fraudulent transfers until October 12, 2018.  (Docket Entry No. 92 at 10).  "TUFTA requires that an [actual] fraudulent-transfer claim must be filed within one year after the fraudulent nature of the transfer is discovered or reasonably could have been discovered." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195 (5th Cir. 2013).  "When a plaintiff discovered or could reasonably have discovered a transfer is generally a question of fact for the fact-finder." *Janey v. Romero*, 817 F.3d 184, 189 (5th Cir. 2016) (collecting cases).

The defendants argue that the claims are outside the statute of limitations because Union Tank knew or reasonably could have known of the transfers in 2017.  (Docket Entry No. 97 at 3). The defendants cite to a 2017 cross-examination in the Illinois action in which Union Tank's

15

counsel asked NuDevco's corporate representative witness if NuDevco had "engaged in any significant transfer of assets since March 2015." (*Id.*; Docket Entry No. 97-1 at 26:6–26:9). The response: "Yes." (Docket Entry No. 97-1 at 23:10–26:12). This cursory response, without more, does not make the allegedly fraudulent transfer "reasonably" apparent. *Cf. Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 590 (5th Cir. 2020) (plaintiffs "knew or could have reasonably discovered" transfers because the details of all transfers were documented in public financial filings); *Janey*, 817 F.3d at 187–92 (given a court-appointed receiver's busy work load and the defendant's complicated accounts, the receiver could not "reasonably" have discovered the fraudulent transfers until a year after receiving access to the accounts).

Union Tank did not receive NuDevco's financial information until NuDevco reluctantly and belatedly responded to postjudgment discovery requests in October 2018. (*See* Docket Entry No. 92 at 10; Docket Entry Nos. 92-7 at 25 (ordering NuDevco to produce financial documents from 2015); Docket Entry Nos. 92-8 at 2 (order to show cause why NuDevco's attorney should not be held in contempt of court for failure to comply with the production request)). Union Tank filed the present action less than a year later, on April 15, 2019. (*See* Docket Entry No. 1). The statute of limitations does not bar Union Tank's efforts to set aside the fraudulent transfers before April 15, 2015, alleged to be actually fraudulent. Summary judgment for the defendants is denied on this issue.

## 2.    The Transferees and Beneficiaries

TUFTA creditors can recover against either "the first transferee of the asset or the person for whose benefit the transfer was made," or "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." TEX. BUS. & COM. CODE § 24.009. For either actual or constructive fraud claims, Union Tank has the burden to show that it may recover against each of the defendants. *Matter of Galaz*, 850 F.3d 800, 804 (5th Cir. 2017)

16

(the judgment creditor has the burden to prove fraudulent transfer by a preponderance of evidence); *see also Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 453 (Tex. Ct. App. 2012) (the plaintiffs must show all the elements as to each allegedly fraudulent transfer).   Union Tank failed to point to facts in the record showing beneficiary or transferee status for some of the entity defendants.   The court grants partial or full summary judgment for those defendants.

*ii.*      *The Cash Transfers*

Union Tank has not pointed to record evidence raising factual disputes material to determining whether certain entity-defendants—Coprotection, Xcal Holdings, AES Ventures Holdings, and NMD Holdings— received or benefited from NuDevco's 2015 cash transfers.   (*See* Docket Entry No. 93-8 at 21, 27; 85-4 at 2–3) (showing which defendants received funds from NuDevco's cash account debits in 2015).   The court grants summary judgment for these defendant-entities on the cash transfers only.

This absence of evidence is enough to grant the defendants' motion for summary judgment stemming from the cash transfers.   *See Kim*, 709 F. App'x at 288 ("Where the non-movant has the burden of proof at trial, the movant may merely point to the absence of evidence." (quotation marks omitted)); (Docket Entry No. 84 at 18–19) (limiting the request for summary judgment to the cash transfers). Union Tank's claims against these defendants based on the LLC transfers remain.

*iii.*      *The LLC Transfers*

Union Tank has not pointed to evidence in the record factual disputes material to whether Associated Energy and Retail Acquisition were beneficiaries or transferees of any LLC transfers. That NuDevco transferred its LLC interests in Retail Acquisition to NuDevco Partners does not indicate that Retail Acquisition either benefited or received assets from NuDevco.   (*See* Docket Entry No. 85-2 at 14) (describing the transfer); *see also Citizens Nat'l Bank of Tex. v. NXS Const., Inc.*, 387 S.W.3d 74, 85 (Tex. Ct. App. 2002) (the bank was a transfer beneficiary because the

17

bank was actually involved in the transfer); *Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 174, 181 (Tex. Ct. App. 2010) (shareholders were beneficiaries because they "assented to and benefitted from [the] transfers" and "knowingly participated in the wrongdoing").

Union Tank has not pointed to evidence that Associated Energy was involved in any of the allegedly fraudulent LLC transfers occurring in 2015.  (*See generally* Docket Entry Nos. 85-2, 85-3, 93-7) (describing the allegedly fraudulent LLC transfers).  Summary judgment is granted for Associated Energy and Retail Acquisition for liability stemming from the LLC transfers.

*iv.     All Fraudulent Transfers*

Union Tank has not raised factual disputes material to determining whether some defendants were transferees or beneficiaries of any transfer.  Those defendants are Xcalibur Logistics, AES Ventures, NuDevco Retail, NuDevco Retail Holdings, Midstream Development, and Midstream Land.  Union Tank points to no record evidence against these parties in its response to the defendant's motion for summary judgment. (*See* Docket Entry No. 92 at 4, 7–10).

Union Tank points to no evidence in the complaint or in its response implicating Midstream Land in either the cash or LLC transfers. (*See* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers); (Docket Entry Nos. 93-8, 85-4) (documenting the various cash transfers); Docket Entry No. 92 (failing to describe any transfer that involved Midstream Land)).[5]

Union Tank rests its claim against Midstream Development on two transfers: (1) Midstream Development transferred all of its LLC interests in Xcalibur Logistics to NuDevco on

---

[5] The plaintiff's theory of liability seems to be based on the fact that Midstream Development owned 100% of Midstream Land at the time of the transfers.  (*See* Docket Entry No. 92 at 8) (citing to Docket Entry No. 85-4 at 8). This theory is a stretch.  Even if the court were to recognize a "benefit" based on an owner–entity's benefit, that argument fails here because Union Tank did not show that Midstream Development either benefited from or participated in any of the allegedly fraudulent transfers.  (*See* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers); (Docket Entry Nos. 93-8, 85-4) (documenting the various cash transfers).

18

July 31, 2015,  (Docket Entry No. 85-2 at 2); and (2) Midstream Development made five significant cash deposits into NuDevco's bank account between May and August 2015.  (*See* Docket Entry No. 93-8 at 15, 18, 21); (*see also* Docket Entry No. 85-4 at 2–3).  TUFTA allows creditors to recover against the debtor's *transferees*, not the debtor's transferors.  (*See* TEX. BUS. & COM. CODE §24.009(b)).  Midstream Development's transfers of its own cash and LLC interests to NuDevco do not make it a beneficiary or transferee of NuDevco's allegedly fraudulent transfers.

Union Tank's TUFTA claims against Xcalibur Logistics, AES Ventures, NuDevco Retail, and NuDevco Retail Holdings fail because these entities were not involved in any of the transfers. Union Tank does not point to evidence that NuDevco Retail was a transferee or beneficiary of any transfer.  NuDevco merely transferred its LLC interests in Xcalibur Logistics, AES Ventures, and NuDevco Retail Holdings to other entities.  (*See* Docket Entry No. 85-2 at 2-5) (NuDevco transferred LLC interests in XCalibur Logistics to NuDevco Partners); (*id.* at 10–13) (NuDevco transferred LLC interests in AES Ventures to NuDevco Partners); (*id.* at 14) (NuDevco transferred LLC interests in NuDevco Retail Holdings to NuDevco Partners); (Docket Entry No. 85-3 at 2–5) (NuDevco transferred LLC interests in NuDevco Retail Holdings to NuDevco Partners).  Union Tank did not point to evidence that these defendants benefited from NuDevco transferring its interests in these defendants.  *See NXS Const., Inc.*, 387 S.W.3d at 85 (a bank was a transfer beneficiary because the bank participated in the transfer and the transfer increased its value); *see also Esse*, 333 S.W.3d at 174, 181 (shareholders were beneficiaries because they "assented to and benefitted from [the] transfers" and "knowingly participated in the wrongdoing").  Similarly, Union Tank does not point to evidence indicating that these defendants were involved in NuDevco making the allegedly fraudulent cash transfers.  (*See* Docket Entry No. 92 at 9–10); (*see also*

Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers); (Docket Entry Nos. 93-8, 85-4) (documenting the various cash transfers).

The record does not show that these defendants—Xcalibur Logistics, AES Ventures, NuDevco Retail, NuDevco Retail Holdings, Midstream Development, and NuDevco Midstream Land—were transferees or beneficiaries of any of NuDevco's allegedly fraudulent cash or LLC transfers. The court grants summary judgment for these defendants on Union Tank's TUFTA claims.

### 3.   Union Tank's Actual Fraud Claim Against the Defendants Other Than NuDevco

The defendants other than NuDevco seek summary judgment as to Union Tank's actual fraud claims, arguing that the evidence does not show that each defendant acted with "intent to hinder, delay, or defraud." TEX. BUS. & COM. CODE §24.005(a)(1); (*see* Docket Entry No. 84 at 22–23). The defendants' motion does not include NuDevco. (Docket Entry No. 84 at 22).

Union Tank argues that its claim is supported by circumstantial evidence of intent under TUFTA's badges of fraud. (Docket Entry No. 92 at 18). Union Tank has shown that at least four badges of fraud apply to these defendants and that two apply to Retail Acquisitions.

Actual fraud exists "if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE § 24.005(a)(1). Because direct proof of fraudulent intent is rarely available, "courts may consider circumstantial evidence to determine whether the transfer was made with fraudulent intent." *Galaz*, 850 F.3d at 804 (citation omitted). TUFTA provides "a non-exhaustive list of facts and circumstances, which are known as the 'badges of fraud,' to be considered in determining whether a transfer was made with actual intent to defraud." *Id.*; *see also* TEX. BUS. & COM. CODE § 24.005(b) (listing the eleven factors).

20

The judgment creditor must show that a transfer is fraudulent by a preponderance of the evidence.

*Galaz*, 850 F.3d at 804.

> The badges of fraud are:
>
> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;
>
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b).  "An individual badge of fraud is not conclusive, but a concurrence of many badges in the same case will always make out a strong case of fraud." *Galaz*, 850 F.3d at 804 (quoting *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. Ct. App. 2007)); *see also id.* at 805 (actual fraud established by six of the eleven badges).

Union Tank asserts that at least seven of the eleven badges apply.  They are: (1) the transfer to an insider; (2) the transferor's retention of control over the property after transfer; (3) the concealment of the transfer; (4) the transfer involved substantially all the debtor's assets; (5) the

consideration debtor received was not reasonably equivalent to the value transferred; (6) the debtor was insolvent shortly after the transfer; and (7) the transfer was shortly before or after a substantial debt was incurred.  (Docket Entry No. 92 at 18 (citing TEX. BUS. & COM. CODE § 24.005(b))).

The court considers the badges as to each of the seven remaining defendants: NuDevco Partners, Associated Energy, Retail Acquisition, Coprotection, NMD Holdings, Xcal Holdings, and AES Ventures.  Each of these defendants was a transferee or beneficiary in at least one of NuDevco's 2015 transfers.

Associated Energy and Retail Acquisition were transferees of NuDevco's cash assets.  (*See* Docket Entry No. 92 at 22; Docket Entry No. 93-8 at 15, 18, 21, 27; Docket Entry No. 85-4 at 2–3 (listing 2015 cash transfers from NuDevco to Associated Energy and from NuDevco to Retail Acquisition)).

NuDevco Partners, Coprotection, NMD Holdings, Xcal Holdings, and AES Ventures Holdings were involved in or direct recipients of NuDevco's LLC transfers.  (Docket Entry No. 92 at 9 (chart of transfers); Docket Entry No. 85-2 at 2–5, 10–13, 14–17 (transfers to NuDevco Partners); Docket Entry No. 85-3 at 2 (describing Coprotection's receipt of LLC interests in NuDevco Retail Holdings; Docket Entry No. 85-2 at 6–9 (NMD Holdings (f/k/a Solandri Investments) was the subsequent transferee, without value, of NuDevco's transfer transfer of LLC interests in NuDevco Midstream Development) Docket Entry No 85-2 at 2–5 (Xcal Holdings (f/k/a Bestbuy Energy) was the subsequent transferee, without value, of NuDevco's transfer of LLC interests in Xcalibur Logistics); Docket Entry No. 85-2 at 10–11 (AES Ventures Holdings (f/k/a Mobil Doc) was the subsequent transferee, without value, of NuDevco's transfer of LLC interests in AES Ventures (f/k/a Spark Energy Ventures))).   Each badge of fraud is discussed below:

i.       *Transfers to Insiders*

TUFTA provides a nonexhaustive list defining "insiders to a corporate debtor," including "an affiliate."  *See* TEX. BUS. & COM. CODE § 24.002(7) (listing other examples of an "insider"). "The cases which have considered whether insider status exists generally have focused on two factors: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length."  *Williams v. Hous. Plants & Garden World, Inc.*, 508 B.R. 11, 17 (S.D. Tex. 2014) (citing *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992)).   Union Tank has pointed to evidence to uncontroverted evidence showing that Maxwell is an insider.  (*See* Docket Entry No. 92 at 14–15). Maxwell is NuDevco's chief executive officer.  He solely owns and controls NuDevco through its parent corporation NuDevco Partners.  (Docket Entry No. 81-4 at ¶ 3); *see* TEX. BUS. & COM. CODE § 24.002(7) ("[An affiliate is] a person who directly or indirectly owns, [or] controls . . . the debtor[.]").  Union Tank also pleaded facts and pointed to evidence supporting the inference that the other remaining defendant–entities are affiliates.  (*See* Docket Entry No. 81-4 at 1–2); (Docket Entry No. 85-3 at 7-8) (organizational charts); *see also* TEX. BUS. & COM. CODE § 24.002(7)(B) (an affiliate is "a corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor or a person who directly or indirectly owns, controls, or holds . . . the debtor").  The defendants' concede that Maxwell controls some of the defendant–entities, and do not dispute the insider status of the remaining defendant–entities, the insider status of the defendant-entities.  (*See* Docket Entry No. 81-4).

ii.       *Retention of Property*

The record shows that Maxwell facilitated each of the LLC transfers and retained them through his other interests in the defendant–entities.  (*See* Docket Entry No. 84 at 9 ("NuDevco

Holdings and certain other Defendants commonly owned by Mr. Maxwell engaged in a company-wide corporate reorganization"). The record does not show that any of the remaining defendants retained the transferred assets. This badge of fraud is met as to Maxwell.

*iii.   Concealed Transfers*

Union Tank points to record evidence that the transfers were "concealed." TEX. BUS. & COM. CODE § 24.005(b)(3); (Docket Entry No. 92 at 10–11) (documenting the NuDevco's resistance and delay in producing documents related to its assets and the transfers). Union Tank does not describe how any of the defendants other than NuDevco concealed the transfers. The record supports finding this badge of fraud met as to NuDevco but not as to the remaining defendants.

*iv.   Transfer Involving Substantially All of Debtor's Assets*

Union Tank argues that the transfers involved substantially all of NuDevco's assets. *See* Docket Entry No. 92 at 10–11; *see* TEX. BUS. & COM. CODE § 24.005(b)(5). None of the individual LLC transfers represented "substantially all" of NuDevco's assets. (*See generally* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the LLC interest transfers). By September 15, 2015, NuDevco had no LLC interests. (*See* Docket Entry No. 92 at 8–9). It had approximately $3,000 in the bank when it received an almost $4 million credit-stock dividend from Spark Energy. (Docket Entry No. 93-8 at 27). On September 24, 2015, NuDevco transferred its remaining cash to NuDevco Partners and Associated Energy. (*Id.*). The September 24, 2015 cash transfers to NuDevco Partners and Associated Energy represented "substantially all" of NuDevco's assets. (*See* Docket Entry No. 93-8 at 27). The record supports finding this badge of fraud for NuDevco Partners and Associated Energy.

24

v.      *Lack of Reasonably Equivalent Consideration*

The record shows that all the LLC interest transfers were made without consideration.  TEX. BUS. & COM. CODE § 24.005(b)(8); (*see generally* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers without describing any consideration); (*see also* Docket Entry No. 85-1 at 77:16–78:3) (the NuDevco representative testified that NuDevco did not receive any consideration in return for the LLC interests transferred to NuDevco Partners, Maxwell, and the other defendants).  The defendants do not point to controverting evidence.  The record supports finding the lack of reasonably equivalent consideration badge of fraud for NuDevco Partners, Associated Energy, Retail Acquisition, Coprotection, NMD Holdings, Xcal Holdings, and AES Ventures.

vi.      *Debtor Insolvency Shortly After Transfer*

Union Tank cites record testimony showing that NuDevco had no assets and generated no revenue less than one month after most of the LLC transfers.  (*See* Docket Entry No. 92 at 11 (citing Docket Entry No. 85-1 at 22:22-23:13, 92:5-93:4)).  The defendants concede that NuDevco's last LLC transfer occurred less than a month before Associated Energy breached the lease.  (*See generally* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers that occurred shortly before or after the breach); (*see also* Docket Entry No. 84 at 11) ("NuDevco['s] . . . transfer of its interests in various LLCs . . . was complete as of August 3, 2015.").  Cash transfers to Associated Energy and NuDevco Partners also occurred shortly before or after the lease was breached.  (*See generally* Docket Entry No 93-8) (describing the cash transfers).  The cash transfers to Retail Acquisition occurred in May 2015.  These transfers are too distant from the breach of the lease to support this badge of fraud for Retail Acquisition, but the

record supports finding this badge of fraud for NuDevco Partners, Associated Energy, Coprotection, NMD Holdings, Xcal Holdings, and AES Ventures.

vii.    *Transfers Shortly Before or After a Substantial Debt*

Finally, Union Tank alleges that the transfers occurred "shortly before or after a substantial debt was incurred." TEX. BUS. & COM. CODE § 24.005(b)(10).  The allegedly fraudulent transfers Union Tank identifies occurred in 2015.  (*See* Docket Entry No. 92 at 7–10).  The defendants concede that NuDevco's last asset transfer took place less than a month before Associated Energy breached the lease.  (*See generally* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the LLC transfers that occurred shortly before or after the breach); (*see also* Docket Entry No. 84 at 11) ("NuDevco['s] . . . transfer of its interests in various LLCs . . . was complete as of August 3, 2015.").  Cash transfers to Associated Energy and NuDevco Partners also occurred shortly before or after the lease was breached.  (*See* Docket Entry No 93-8) (describing the cash transfers).  The cash transfers to Retail Acquisition occurred in May 2015.  These transfers are too distant from the breach of the lease to support this badge of fraud for Retail Acquisition.  The record supports finding this badge of fraud for the defendants except Retail Acquisition.

Union Tank points to record evidence that supports finding at least four badges of fraud for each remaining defendant except Retail Acquisition: transfers to an insider; lack of reasonably equivalent consideration; insolvency of the debtor shortly after the transfers; and transfer shortly before or after substantial debt was incurred.  Union Tank has pointed to two badges of fraud supporting its claim of actual fraud against Retail Acquisition: transfer to an insider and lack of reasonable consideration.  Union Tank has raised issues of fact material to whether the defendants' transfers were actually fraudulent.  *See Galaz*, 850 F.3d at 804 ("An individual badge of fraud is not conclusive, but a concurrence of many badges in the same case will always make out a strong

26

case of fraud.").  Summary judgment is denied as to NuDevco Partners, Associated Energy, Retail Acquisition, Coprotection, NMD Holdings, Xcal Holdings, and AES Ventures.

### 4.   The Constructive Fraud Claim

The defendants argue that Union Tank cannot prove the elements of constructive fraud by a preponderance of the evidence.  (Docket Entry No. 84 at 13).  Under Texas law, a transfer is constructively fraudulent if the debtor made the transfer:

> [W]ithout receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a).

A transfer is also constructively fraudulent if:

> [T]he debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation or if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. . . .

TEX. BUS. & COM. CODE § 24.006.

Union Tank points to summary judgment evidence, in the form of Associated Energy's emails from late 2014 through September 2015 that discuss preparation to "get out of" the lease agreement  and reduce its railcar fleet even if it meant a "major penalty." (Docket Entry Nos. 93-3, 93-4, 93-5, 93-6).  Associated Energy and NuDevco shared a Chief Financial Officer, Todd Gibson, who signed the lease and the guaranty agreement.  (Docket Entry No. 92-1 at 11; Docket Entry No. 92-2 at 6).  The record also shows that NuDevco had less than $4,000 in cash and no

LLC interests when it breached the lease.  (*See* Docket Entry No. 93-8 at 24–27).  Though NuDevco received almost $4 million in stock dividends from Spark Energy on Sept. 15, 2015, the record does not indicate that NuDevco had any reason to know it would receive those funds on September 1, 2015, when Associated Energy abandoned the railcars.  (*See id.*).  There are issues of fact material to whether the defendants and NuDevco participated in the transfers: (1) while NuDevco was engaged or about to engage in a business transaction leaving them with unreasonably small remaining assets, or (2) while the defendants believed, or reasonably should have believed, that NuDevco would incur debts beyond the its ability to pay.  *See* TEX. BUS. & COM. CODE § 24.005(a).  Summary judgment is denied for the entity defendants on this issue.

### 5.     Maxwell's Liability under TUFTA

The defendants argue that, as a corporate officer, Maxwell cannot be liable for the cash transfers as a matter of law.  (Docket Entry No. 84 at 20).  Union Tank argues that Maxwell is liable because had sole control over NuDevco and sole ownership over NuDevco Partners, which he caused to transfer all LLC assets from NuDevco to other entities he indirectly owned or controlled.  (Docket Entry No. 92 at 16).  The record shows that Maxwell was a direct recipient or beneficiary of all the LLC interests and cash transfers.  He facilitated all transfers, which resulted in his continued control over all the assets.  (*See* Docket Entry No. 92 at 16–17).

Under Texas law, an LLC owner cannot be held liable for any "matter relating to or arising from the obligation [of the LLC] on the basis that the [owner] was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory[.]"  TEX. BUS. ORGS. CODE § 21.223(a)(2).  But an exception provides that Union Tank can hold Maxwell liable if he used the LLCs involved in the transfers "for the purpose of perpetuating and did perpetrate an actual fraud on [Union Tank] primarily for [his] direct personal benefit[.]"

*Id.* §21.223(b).  Because Maxwell indirectly or directly received all of the asset transfers at issue, the court denies summary judgment on this issue.

### i.      *Cash Transfers*

The defendants argue that Maxwell cannot be held liable for the cash transfers because there is no evidence that he either transferred or received any of NuDevco's cash transfers at issue. (*See* Docket Entry No. 84 at 20).  This argument is unpersuasive.  It is undisputed that many of the cash transfers in 2015 went to entities that were under Maxwell's direct ownership or control.  (*See* Docket Entry Nos. 93-8, 85-4) (describing the cash transfers); (*see also* Docket Entry No. 46 at 2–6) (Maxwell admitted sole control or ownership of many of the transferee–defendants). There is a question of material fact as to whether these cash transfers directly benefited Maxwell because they enabled him to retain all NuDevco's cash assets through his other entities.

### ii.      *LLC Transfers*

Maxwell signed the transfer documents for all defendant–entities' LLC transfers.  (Docket Entry No. 84 at 20); (*see also* Docket Entry Nos. 85-2, 85-3, 93-7) (documenting the various LLC transfers).  The defendants conceded during the April 1, 2021 oral argument that Maxwell's involvement as a transferee is enough for Union Tank to recover against him under TUFTA for the LLC transfers.  The defendants argued in their motion that mere facilitation of the LLC transfers is not enough to hold Maxwell liable.  (Docket Entry No. 84 at 20).  The record supports an inference of far more than mere facilitation.  First, Maxwell was himself a transferee without value of each of the LLC transfers.  *See Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 266 (5th Cir. 2012) (directors may be liable for transfers of their corporations if they "actually received distributions of the transferred property").  Second, Maxwell was the majority shareholder of both NuDevco and the receiving entities.  *See Esse*, 333 S.W.3d at 181 (defendants were beneficiaries

of a fraudulent transfer because they were the majority shareholders of both the transferee and transferor entities). Finally, Maxwell signed not just for NuDevco, but for every receiving entity of the LLC transfers at issue. (Docket Entry Nos. 85-2, 85-3, 93-7); *Citizens Nat'l Bank*, 387 S.W.3d at 85 (the shareholder's actual involvement with a transfer to another shareholder–owned entity supported a finding that the shareholder was a beneficiary of the transfer). Maxwell can be held liable for his role in the LLC transfers.

*iii.*     *Piercing the Corporate Veils*

"[A] plaintiff seeking to pierce the veil of LLCs . . . must prove that the individual used the LLC form to perpetrate actual fraud for the individual's direct personal benefit." *Spring St. Partners-IV, L.P.*, 730 F.3d 427, 444 (5th Cir. 2013); *see also* TEX. BUS. ORGS. CODE §§ 21.223(b), 21.224. Union Tank has pointed to evidence of six badges of fraud to support an inference that Maxwell committed actual fraud: (1) Maxwell is an "insider" to NuDevco; (2) Maxwell "retained possession or control of the property transferred" because he indirectly or directly owned or controlled the transferee entities; (3) Maxwell facilitated and signed for all parties engaged in the NuDevco LLC interest transfers for no consideration; (4) NuDevco "was insolvent or became insolvent shortly after" the LLC transfers; (5) NuDevco transferred all of its cash to other Maxwell–owned or controlled entities shortly before or after it acquired a substantial debt. *See* TEX. BUS. & COM. CODE § 24.005(b)(1), (2), (8), (9), (10). The badges of fraud and the record support at a minimum raise factual disputes material to determining whether the court can pierce the corporate veil to hold Maxwell personally liable for the transfers. The defendants' motion for summary judgment on this issue is denied.

**V.      Associated Energy's Commercial Frustration Defense**

Associated Energy, the entity that originally defaulted on the lease, raised an affirmative defense of commercial frustration based on "intervening and unforeseeable regulatory and industry changes which effectively destroyed the fundamental purpose of the Master Lease." (Docket Entry No. 44 at 29). Union Tank argues that this defense fails as a matter of law, because Associated Energy relies only on a changed economic situation, which is insufficient to show commercial frustration under Illinois law. Associated Energy responds that it provided evidence of regulatory and industry changes that were not foreseeable when it executed the lease. (Docket Entry No. 94 at 18).

The test for commercial frustration is: "(1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance has been totally or nearly destroyed by the frustrating event." *N. Illinois Gas Co. v. Energy Co-op., Inc.*, 461 N.E.2d 1049, 1059 (Ill. App. Ct. 1984). Changing market prices are not enough. *Id.* ("[T]he only certainty of the market is that prices will change . . . If changed prices, standing alone, constitute a frustrating event sufficient to excuse performance of a contract, then the law binding contractual parties to their agreements is no more."). Associated Energy points to three regulatory or market changes that happened after it signed the railcar lease: (1) 2015 rules by the Pipeline and Hazardous Materials Safety Administration requiring railcars shipping crude petroleum oil and other hazardous materials to be replaced or retrofitted by 2018, (2) new $1,000 to $1,200 surcharges on railcars shipping crude petroleum oil, and (3) "numerous railcar accidents . . . involving the shipment of flammable liquids" and drawing increased regulatory scrutiny, including a Federal Railroad Administration Emergency Order issued on April 17, 2015. (Docket Entry No. 94 at 3–4). But Associated Energy has not pointed to evidence that these regulatory and market changes were not foreseeable. *See*

31

*Illinois-Am. Water Co. v. City of Peoria*, 774 N.E.2d 383, 391 (2002) (the doctrine of commercial frustration did not apply when a company failed to present any evidence that a regulatory change was not foreseeable.).  It has not satisfied the "rigorous" test for commercial frustration.  *See Blue Cross Blue Shield of Tennessee v. BCS Ins. Co.*, 517 F. Supp. 2d 1050, 1059 (N.D. Ill. 2007).

Drawing all reasonable inferences in favor of Associated Energy, the record supports finding that Associated Energy "was aware of the potential for adverse market shifts which now form the basis for its defense[]."  *N. Illinois Gas Co.*, 461 N.E.2d at 1059.  Union Tank points to evidence that Associated Energy was on notice of the impending regulatory changes before it executed the lease in April 2015.   First, while the final content of the rule was unknown, the Pipeline and Hazardous Materials Safety Administration issued a notice of proposed rulemaking activity eight months before Associated Energy assumed the lease.  (Docket Entry No. 96 at 16).  Next, Associated Energy discussed the impending railcar surcharge in internal emails in late 2014 and filed a lawsuit to challenge it in March 2015.  (Docket Entry No 81 at 11).  Finally, the Federal Railroad Administration Emergency Order that Associated Energy cites as unforeseeable details years of similar regulatory concerns and similar orders leading up to the issuance of that order.  The April 17, 2015, emergency order explains that "[i]n the last two years, [the Department of Transportation] . . . has taken numerous actions to address the safe transportation by rail of flammable liquids . . . [including] three emergency orders and several safety advisories." Fed. Railroad Admin. Emergency Order No. 30 dated Apr. 17, 2015, available at https://railroads.dot.gov/sites/fra.dot.gov/files/fra_net/14474/EO%2030%20%28FINAL%29.pdf.  Union Tank has pointed to the absence of evidence showing that the regulatory changes were unforeseeable, and Associated Energy has failed to respond with more than "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Lamb*, 914 F.3d at 946.

Nor has Associated Energy pointed to evidence showing that the value of its counterperformance was totally or nearly totally destroyed by the intervening events. Associated Energy states that, in response to the industry changes it outlines, it "was forced to and did analyze its railcar fleet and business operations," including whether to terminate leases or change the type of railcar used. (Docket Entry No. 94 at 5). Union Tank points to summary judgment evidence, in the form of Associated Energy's emails from late 2014 through September 2015 that discuss preparation to "get out of" the lease agreement and reduce its railcar fleet even if it meant a "major penalty." (Docket Entry Nos. 93-3, 93-4, 93-5, 93-6). None of this evidence raises an issue of material fact as to whether the value of Associated Energy's performance was "rendered meaningless" due to the change in circumstances. *Smith v. Roberts*, 370 N.E.2d 271 (1977). Instead, the record supports the inference that Associated Energy made an ordinary business decision based on a cost-benefit analysis. Summary judgment for Union Tank is granted on Associated Energy's affirmative defense of commercial frustration.

## VI.   Union Tank's Provisional and Equitable Remedy Claims Proceed with the Underlying Substantive Fraud Claims

The defendants ask the court to dismiss Union Tank's requests for an attachment (Count IV), injunction (Count V), and appointment of a receiver (Count VI) if summary judgment is granted in its favor regarding the TUFTA claim (Count III). (Docket Entry No. 84 at 23). TUFTA allows successful creditors to seek provisional and equitable remedies like attachment, injunction, appointment of a receiver, and "any other relief the circumstances may require." *See* TEX. BUS. & COM. CODE §24.008.

Union Tank's claims for attachment, injunction, and the appointment of a receiver proceed because the court has denied the defendants' request for summary judgment on the TUFTA issues. *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir.2012) (requests for

injunctive relief depend on the preservation of the underlying substantive claims).  The court has found that Associated Energy is liable under the lease and and NuDevco is liable under the guaranty for the $1,417,145.46 in damages awarded by the Illinois court and the $935,600 in unpaid rent Union Tank seeks.  Summary judgment for the defendants is denied.

## VII.    Conclusion

At bottom, despite the defendants' elaborate organization and transfers, this is a collection action, and it may proceed.  Union Tank's motion for summary judgment, (Docket Entry No. 81), is granted and denied in part.  Summary judgment is granted for Union Tank on the issue of NuDevco's liability under the guaranty and Associated Energy's liability under the lease.  Summary judgment is granted for Union Tank on Associated Energy's affirmative defense of commercial frustration.

The defendants' motion for summary judgment, (Docket Entry No. 84),  is granted in part and denied in part.  Summary judgment for Xcalibur Logistics, AES Ventures, NuDevco Retail, NuDevco Retail Holdings, Midstream Development, and NuDevco Midstream Land is granted on all fraudulent transfer claims.  Summary judgment is granted for Coprotection, Xcal Holdings, AES Ventures Holdings, and NMD Holdings on the cash transfers.  Summary judgment is granted for Associated Energy and Retail Acquisition on the LLC transfers.

Associated Energy is liable under the lease and and NuDevco is liable under the guaranty for the $1,417,145.46 in damages awarded by the Illinois court and the $935,600 in unpaid rent. Fraudulent transfer claims based both on cash and LLC transfers proceed against Maxwell, NuDevco Partners, and NuDevco Partners Holdings.  The claims based on fraudulent transfers of cash proceed against Associated Energy Services and Retail Acquisition.  The claims based on fraudulent transfers of LLC interests proceed as to Coprotection LLC, NuDevco, NMD

Holdings, Xcal Holdings, and AES Ventures Holdings.

Union Tank must confer with NuDevco and Associated Energy and file a proposed final judgment on the claims for unpaid rent under Count I and Count II of the complaint and any award of costs no later than June 4, 2021.

Union Tank must file a supplemental brief, not to exceed fifteen pages, no later than June 25, 2021, on whether a provisional remedy of attachment under Section 24.008 of the Texas Business and Commerce Code, an injunction preventing the defendants from disposing of the remaining funds, or the appointment of a receiver to locate and preserve the damages is needed. The remaining defendants must respond, in a brief not to exceed fifteen pages, no later than July 16, 2021.  Union Tank may respond, in a brief not to exceed five pages, no later than July 23, 2021.

SIGNED on May 21, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge